**TRANSUNION CORPORATION and Union Industries, Inc., Appellants,**

v.

**PEPSICO, INC., Appellee.**

**No. 561, Docket 86–7805.**

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1986.

Decided Feb. 5, 1987.

Richard G. Menaker, Menaker & Herrmann, New York City (Robert F. Herrmann, of counsel), for appellants.

Ronald S. Rolfe, Cravath, Swaine & Moore, New York City, (Louis M. Solomon, James J. Buchal, of counsel), for appellee.

Before OAKES, CARDAMONE and WINTER, Circuit Judges.

PER CURIAM:

Transunion Corporation ("Transunion") and its subsidiary Union Industries, Inc. ("UII"), Philippines corporations, appeal the judgment and order of the United States District Court for the Southern District of New York, Edward Weinfeld, Judge, dismissing their action against PepsiCo, Inc. ("PepsiCo"), for fraudulently inducing them to enter into a Compromise Agreement to settle an earlier dispute, for damages for breach of this and of an earlier agreement, and for treble damages for civil RICO violations under 18 U.S.C. §§ 1961–1968 (1982). Judge Weinfeld's opinion is reported as *Transunion Corp. v. PepsiCo, Inc.*, 640 F.Supp. 1211 (S.D.N.Y. 1986). Appellants argue that Judge Weinfeld abused his discretion when he granted PepsiCo's motion to dismiss the complaint on the ground of forum non conveniens. They argue too that he abused his discretion when he stayed discovery pending determination of the motion to dismiss. We affirm, substantially on Judge Weinfeld's opinion.

Transunion had a contract (the "1981 Supply Agreement") to supply Pepsi-Cola Bottling Company of the Philippines ("PCBCP") with glass bottles. In 1983, Transunion brought an action in the Philippines against PCBCP and PepsiCo for breach of this contract. Following negotiations in the Philippines and in New York, this action was settled by a 1983 Compromise Agreement that required, inter alia, PepsiCo to buy bottles from Transunion through 1986 and Transunion to meet certain quality standards. In March 1985, PepsiCo sold its Philippines bottling operations to a third party. On December 5, 1985, Transunion gave notice of its cancellation of the 1983 Compromise Agreement on the ground that PepsiCo had breached it by this sale. On December 17, 1985, however, PepsiCo filed suit in the Philippines alleging, inter alia, that appellants had breached the Agreement's quality standards. The Philippine court granted PepsiCo a writ of preliminary attachment on properties of Transunion and its president, Carlos Ty.

On December 27, appellants filed this suit in the Southern District of New York. Dismissal on forum non conveniens grounds was conditioned on PepsiCo's (1) waiver of any statute of limitations defenses it might have in the Philippines with respect to the claims asserted in the Southern District of New York and (2) agreement to make its employees available in the Philippines for deposition or trial.

The appropriate standard of review of a forum non conveniens determination is whether the trial court abused its discretion in weighing the established public and

private interest factors articulated by the Supreme Court. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *see also Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (factors). The judge's opinion here is typically careful and complete, and his decision a reasonable one. The judge clearly stated that "a plaintiff's choice of forum should rarely be disturbed and the burden is on the defendant to establish that the action should be dismissed on the ground of forum non conveniens." 640 F.Supp. at 1215. His statement that this presumption is less weighty where plaintiffs are foreigners, *id.*, is fully supported by his citation to *Piper Aircraft*, 454 U.S. at 255–56, 102 S.Ct. at 265–66.

■ Judge Weinfeld reasonably held that appellants have very minimal contacts with the United States: the contracts at issue in this action relate exclusively to the Philippines; most witnesses and documents are in the Philippines; many witnesses speak Tagalog, a Philippines dialect, as their primary language; and obtaining documents located in the Philippines would probably require the use of letters rogatory and might also be complicated by a Philippines presidential decree prohibiting removal of documents from the Philippines without official approval. 640 F.Supp. at 1215–17. On the other side, favoring a New York forum, were the facts that PepsiCo is a New York corporation; some negotiations for the 1983 settlement did happen to occur in New York while Transunion's president was visiting there, and it was during these negotiations that the alleged fraudulent misrepresentations were made by senior PepsiCo officials; and some few witnesses and documents are in New York. *Id.* at 1216. Judge Weinfeld reasonably concluded that "[p]laintiffs have not offered a single compelling reason with respect to their own convenience to support their choice of this forum." *Id.* at 1217.

Public interest factors similarly were reasonably held to favor dismissal: Philippines law would probably apply to both the 1981 and 1983 agreements and to the effects of the order entered by a Philippine court upon settlement of the 1983 Philippine litigation; Philippine courts are apparently no more congested than the courts of the Southern District of New York; no showing was made that political unrest in the Philippines has had an adverse effect upon the judicial system there; PepsiCo has assets in the Philippines against which a Philippine judgment could be enforced (alternatively, if these proved inadequate, a Philippines judgment could be enforced against New York assets); and appellants could assert their claims in the New York complaint as counterclaims in PepsiCo's Philippines action, thereby saving the unwarranted waste of judicial resources that would result from the trial of claims arising out of the same facts in both New York and the Philippines. *Id.* at 1217–19.

■ Appellants rely heavily on the fact that the New York complaint includes a RICO count that they may not be able to assert in the Philippines. This argument has no merit. First, though appellants might not be able to claim RICO violations and RICO triple damages in the Philippines, they could assert the three underlying frauds (set out at 640 F.Supp. at 1214). That they could not get triple damages if they proved the frauds underlying their RICO claim in the Philippines is irrelevant: "dismissal may not be barred solely because of the possibility of an unfavorable change in law." *Piper Aircraft*, 454 U.S. at 249, 102 S.Ct. at 262. Furthermore, Judge Weinfeld noted that "plaintiffs' RICO cause of action, as alleged, appears to be legally deficient" due to improper pleading and lack of standing as to two of the three alleged predicate acts, 640 F.Supp. at 1217 & n. 19.

Appellants raise for the first time on appeal the argument that the RICO statute specifies venue in the United States. Though 18 U.S.C. § 1965(a) (1982) provides that any civil RICO action "may be instituted" in the district court in any district with which the defendant has certain specified

connections, dismissal on forum non conveniens grounds has been upheld in many other cases involving statutes with special venue provisions. For example, the Jones Act provides, 46 U.S.C. § 688(a) (1982), that jurisdiction "shall be" in district court. Yet this court, upholding a dismissal of a Jones Act claim when there was a convenient Philippines forum, has held that the forum non conveniens doctrine is applicable in Jones Act cases. *Cruz v. Maritime Company of Philippines*, 702 F.2d 47, 48 (2d Cir.1983) (per curiam); *see also Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 522 n. 2 & 531–32, 67 S.Ct. 828, 830 n. 2 & 835, 91 L.Ed. 1067 (1947) (upholding dismissal on forum non conveniens grounds of a derivative suit filed under 28 U.S.C. § 112 (recodified as amended at 28 U.S.C. § 1401 (1982))); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 431 (9th Cir.1977) (suggesting a Lanham Act infringement claim might be dismissed on forum non conveniens grounds, thought the Act contains a special venue provision, 15 U.S.C. § 1121 (1982)).

■ Appellants' argument that RICO cases cannot be dismissed on forum non conveniens grounds is based chiefly upon the statement in the legislative history that "[s]ection 1965 [of RICO] contains broad provisions regarding venue ..., which are modelled on present antitrust legislation," H.R.Rep. No. 1549, 91st Cong., 2d Sess. 58 (1970) ("House Report"), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4007, 4034. This statement, they argue, indicates congressional intent that the RICO venue provision should embody the holding in *United States v. National City Lines, Inc.*, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948), that a special venue provision, section 12 of the Clayton Act, 15 U.S.C. § 22 (1982), deprived the court of discretion to dismiss a Sherman Act suit on forum non conveniens grounds. This argument is unpersuasive. The decision in *National City Lines* was based upon a thorough review of legislative history of the Clayton Act, which disclosed "no other thought than that the choice of forums was given as a matter of right, not as one limited by judi-

cial discretion." 334 U.S. at 586–87, 68 S.Ct. at 1176. A review of the legislative history of RICO, however, discloses no mandate that the doctrine of forum non conveniens should not apply, nor is there any indication that Congress had the interpretation of 15 U.S.C. § 22 in *National City Lines* in mind when it drafted section 1965 of RICO. Indeed, the House Report's reference to "present" antitrust legislation suggests that Congress was aware that the result in *National City Lines* was effectively overruled by Congress in 1948 when it enacted 28 U.S.C. § 1404(a) (1982), the legislative history of which states that it "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper." H.R.Rep. No. 308, 80th Cong., 1st Sess. A132 (1947); *see United States v. National City Lines, Inc.*, 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226 (1949). It follows that at the time RICO was enacted in 1970, the forum non conveniens doctrine applied to antitrust suits by virtue of 28 U.S.C. § 1404(a), so the reference in the RICO legislative history to 18 U.S.C. § 1965(a) having been modeled on the antitrust venue provisions does not avail appellants.

■ Nor is there any merit in appellants' claim that the judge abused his discretion in granting a protective order to prevent further discovery prior to its decision on the motion to dismiss. Motions to dismiss for forum non conveniens may be decided on the basis of affidavits. *Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir.) (en banc), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). Indeed, as the Court noted in *Piper Aircraft*, 454 U.S. at 258, 102 S.Ct. at 267, "[r]equiring extensive investigation would defeat the purpose of [the] motion."

Judgment affirmed.