Maria GAZIS, Individually, and on behalf of her Minor Children, Gerasimos Gazis and Theodoros Gazis, and as Personal Representative of the Estate of Nikolaos Gazis, Plaintiff,

v.

JOHN S. LATSIS (USA) INC., John Latsis, Hermes Shipping & Trading Corp., S.A. Panama, and the M/T LADY EMA, Defendants.

No. 87 Civ. 5310 (CHT).

United States District Court,
S.D. New York.

Jan. 30, 1990.

Kreindler & Kreindler, New York City (Paul S. Edelman, of counsel), for plaintiff.

Cardillo & Corbett, New York City (Christophil B. Costas, of counsel), for defendant John S. Latsis (USA) Inc.

Freehill, Hogan & Mahar, New York City (John J. Walsh and Kevin J. Keelan, of counsel), for defendants John Latsis and Hermes Shipping & Trading Corp., S.A. Panama.

## OPINION

TENNEY, District Judge.

This case is brought pursuant to the Jones Act, 46 U.S.C. § 688 (1982), and the general maritime law of the United States. Defendants John Latsis ("John Latsis") and Hermes Shipping & Trading Corp., S.A. Panama ("Hermes"), have moved to dismiss for lack of personal jurisdiction and forum non conveniens. John Latsis and John S. Latsis (USA), Inc. ("Latsis (USA)"), have also moved to dismiss for failure to state a claim upon which relief may be granted. In addition, defendants have requested a stay of this action pending the outcome of a declaratory proceeding commenced by Hermes in Greece. For the reasons set forth below, all of defendants' motions are denied.

## BACKGROUND

In 1984, Nikolaos Gazis, a Greek citizen, was serving as an apprentice master aboard the Greek flag vessel, LADY EMA. On December 27, 1984, the LADY EMA was docked at the port of Amsterdam, Holland. Gazis fell on the deck of the ship while making the gangway fast and sustained various injuries. He was taken to a hospital in Amsterdam and died approximately four days later. His estate has asserted several tort claims against defendants based on the Jones Act and general maritime law.

The LADY EMA is owned by Hermes, a Panamanian corporation, and managed on a day-to-day basis by Bilander Marine Corporation ("Bilander"), a Greek company. Most of the crew of the LADY EMA are Greek. Plaintiff contends that Hermes is the owner of the LADY EMA, but that it jointly operates the ship with Latsis (USA), a United States corporation. Plaintiff also contends that John Latsis is the owner of Hermes and Latsis (USA), and is therefore the ship's "beneficial owner." Defendants have admitted that Hermes is the owner of the LADY EMA but have denied that John Latsis or Latsis (USA) have any association with Hermes or the ship.

## DISCUSSION

The resolution of many of defendants' motions turns on whether Latsis (USA) or John Latsis are in some way connected to the LADY EMA and whether this connection stems from dealings in the United States. These determinations control whether this court has personal jurisdiction over John Latsis, whether it has subject matter jurisdiction over John Latsis and Latsis (USA), and whether this is an inconvenient forum. The evidence on record relating to John Latsis and Latsis (USA) is a mixture of pleaded allegations and facts contained in sworn affidavits. The contentions and denials are set forth in the following chart. Contentions sworn to in affidavits or affirmations, see Affidavit of Vassiliki Armogeni, sworn to March 16, 1988 ("Armogeni Aff."); Affidavit of Basil Gregory, sworn to March 18, 1988 ("Gregory Aff."); Affirmation of Paul S. Edelman, Esq., dated March 29, 1988 ("Edelman Aff. I"); Affirmation of Paul S. Edelman, Esq., dated March 31, 1988 ("Edelman Aff. II"), or provided pursuant to Local Rule 3(g) of this District, see Statement of John J. Walsh, Esq., dated March 31, 1988 ("3(g) Statement"), are indicated in bold face.

| PLAINTIFF | DEFENDANT |
|---|---|

### Latsis (USA)

| | |
|---|---|
| 1. Latsis (USA) is the operator of the LADY EMA (Complaint ¶ 6). | 1. **Latsis (USA) never operated the LADY EMA** (Gregory Aff. ¶ 3). |
| 2. Latsis (USA) is the agent of Hermes in the US (Complaint ¶ 6). | 2. **Hermes never used Latsis (USA) as an agent** (Armogeni Aff. ¶ 6). |
| 3. Latsis (USA) is the employer of Gazis (Complaint ¶ 7). | 3. **Latsis (USA) never employed Gazis** (Gregory Aff. ¶ 3). |
| 4. Latsis (USA) is the agent of John Latsis in the US (Complaint ¶ 6). | 4. Denied (Latsis (USA) Answer ¶ 2; John Latsis/Hermes Answer ¶ 1). |
| 5. **Latsis (USA) is located in Petrola House; the shipping community understands Petrola to be a contraction of Petroleum and Latsis** (Edelman Aff. II). | 5. Unsworn hearsay described in affidavit stating "Latsis (USA) [is] not involved with shipping in general" (Gregory Aff. ¶ 3). |

### John Latsis

| | |
|---|---|
| 6. John Latsis is the beneficial owner of Hermes (Complaint ¶ 14). | 6. No denial. |
| 7. John Latsis is the beneficial owner of the LADY EMA (Complaint ¶ 14). | 7. **John Latsis "neither owns, operates, or charters the LADY EMA"** (3(g) Statement ¶ 9). |
| 8. **John Latsis controls a large shipping operation from Petrola House, believed to include the LADY EMA** (Edelman Aff. I). | 8. **John Latsis "neither owns, operates, or charters the LADY EMA"** (3(g) Statement ¶ 9). |
| 9. **John Latsis owns 100% of the stock in Latsis (USA)** (Edelman Aff. II). | 9. No denial. |
| 10. John Latsis resides in the United States (Complaint ¶ 11). | 10. **"John Latsis is a citizen and resident of Greece"** (3(g) Statement ¶ 9). |

---

### A. *Failure to State a Claim as to Latsis (USA)*

▄▄▄ The Jones Act confers jurisdiction over a "defendant employer" on whose boat a seaman has been injured. 46 U.S.C. § 688(a). For a defendant to be held liable under the Jones Act, the plaintiff must show that defendant is the plaintiff's employer. *See, e.g., Spinks v. Chevron,* 507 F.2d 216, 224 (5th Cir.1975); *Tsakonites v. Transpacific Carriers Corp.,* 246 F.Supp. 634, 641 (S.D.N.Y.1965), *aff'd* 368 F.2d 426 (2d Cir.1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 434 (1967). Latsis (USA) claims that plaintiff has failed to show any connection between Latsis (USA) and the LADY EMA, and therefore it cannot be the employer of Gazis.[1] Plaintiff has pleaded in its complaint that: (1) Latsis (USA) is the operator of the LADY EMA; (2) Latsis (USA) is the U.S. agent of Hermes; and (3) Latsis (USA) is the employer of Gazis. Each of these as-

---

**1.** Latsis (USA) also contends that since Hermes admitted in its Answer that it was the owner of the "LADY EMA," Latsis (USA) could not possibly be an owner as well. Defendant relies on *Cosmopolitan Shipping Co. v. McAllister,* 337 U.S. 783, 791, 69 S.Ct. 1317, 1321, 93 L.Ed. 1692 (1949), in which the Supreme Court stated that "under the Jones Act only one person, firm, or corporation may be sued as employer." The reliance on *Cosmopolitan* is misplaced. That case stands only for the proposition that a seaman may not recover from more than one employer under the Jones Act. *See Spinks,* 507 F.2d at 225 n. 16. Plaintiff is not required to speculate at her peril which defendant the court will eventually determine to be her "employer" for purposes of establishing subject-matter jurisdiction. *Id.* The mere fact that Hermes has admitted it was the owner of the LADY EMA is not controlling. *See Karvelis v. Constellation Lines, S.A.,* 608 F.Supp. 966, 969–71 (S.D.N.Y. 1985), *aff'd,* 806 F.2d 49, 52 (2d Cir.1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987) (holding "operator" of a ship liable under the Jones Act despite fact that another defendant had admitted it was the "owner").

sertions has been directly refuted by the sworn statements of Mrs. Armogeni, an employee of Hermes, and by Basil Gregory, the president of Latsis (USA).

On the other hand, Latsis (USA) did not directly refute an assertion by plaintiff's attorney that it is located in the "Petrola House" in New York City, which the shipping community understands to be a contraction of Petroleum and Latsis. In his affidavit, Mr. Gregory stated only that he heard another employee of Latsis (USA) inform plaintiff's counsel that Latsis (USA) is "not involved in shipping in general." As this is clearly hearsay, it is given very little weight by the court. Further, this vague denial does not shed much light on what Latsis (USA) does and why the shipping community might have knowledge about it. Plaintiff's attorney also submitted an affidavit in which he states that John Latsis operates a large shipping operation out of Petrola House "believed to include" the LADY EMA, and that John Latsis owns 100% of Latsis (USA). John Latsis' statement that he "neither owns, operates, [n]or charters the LADY EMA" does not address plaintiff's assertions about other shipping activities in Petrola House. Therefore, they are deemed to be denied, leaving them issues of fact. *See* Fed.R.Civ.P. 8(d). Moreover, John Latsis has not denied plaintiff's contention that he is the beneficial owner of Hermes, the admitted owner of the ship. In a summary judgment motion, the court is required to resolve all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). On this combination of facts, it is reasonable to infer that John Latsis and Latsis (USA) are generally involved in shipping in the United States, although the issue remains to be resolved.

Normally, when a motion for summary judgment is supported by affidavits, the adverse party may not rest upon the "mere allegations or denials of his pleading" but must provide affidavits setting forth specific facts showing that there are triable issues in the case. Fed.R.Civ.P. 56(e). The purpose of the summary judgment proce-

dure is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Id. Advisory Committee's Note. However, before summary judgment will be granted, it must be "quite clear what the truth is." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). In this case, although Latsis (USA) responded directly to plaintiff's major contentions, it has not sufficiently refuted others, leaving the record unclear as to the relationship between the various defendants. Therefore, summary judgment is inappropriate.

■ Further, summary judgment is generally improper where the party opposing the motion has not had the opportunity to discover potentially controlling evidence. *Ryder Energy Distrib. v. Merrill Lynch Commod. Inc.*, 748 F.2d 774, 779 (2d Cir. 1984); *Schering Corp. v. Homes Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir.1983); *See Nunez–Lozano v. Rederi*, 634 F.2d 135, 137 (5th Cir.1980) (court was able to determine subject matter jurisdiction in Jones Act case because relevant facts had been discovered). When, as in this case, one party has superior access to factual information, and the other has not had the opportunity to take discovery, it is within the discretion of the court to permit discovery to create a record upon which to decide the issues. *See Colburn v. Upper Darby Township*, 838 F.2d 663, 674 (3rd Cir.1988), *cert. denied* — U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989); *General Elec. Co. v. Bucyrus–Erie Co.*, 563 F.Supp. 970, 975 (S.D.N.Y.1983); 6 (Part 2) J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.15[5] (2d ed. 1988).

Although the underlying bases for plaintiff's allegations are indeed thin, the court believes that they provide sufficient grounds for her to take limited discovery to test the validity of the statements in the affidavits submitted by defendant and determine the relationship, if any, between the defendants. It may well be that plaintiff's allegations will not stand the test of limited discovery, but there is a possibility that she may discover evidence that would

defeat defendant's motion to dismiss. Therefore, this is not the type of case in which it is clear from the outset that discovery will do nothing more than delay the proceeding. *See, e.g., Grand Bahama Petroleum Co. v. Asiatic Petroleum,* 550 F.2d 1320, 1327 (2d Cir.1977). The court will not preclude plaintiff from attempting to substantiate her evidence simply because defendant has superior access to the relevant factual evidence.

**B.** *Failure to State a Claim as to John Latsis*

■ Defendant John Latsis has also moved for summary judgment on the ground that plaintiff has failed to show that he is an "employer" under the Jones Act. The chart indicates that defendant has not denied plaintiff's contentions that he is the beneficial owner of Hermes—the record owner of the LADY EMA—and that he operates a large shipping operation from the United States. The court must therefore assume at this stage that John Latsis controls a large shipping operation from the United States and is the ultimate owner of the LADY EMA. John Latsis may therefore be classified as an "employer" under the Jones Act. *See, e.g., Grammenos v. Lemos,* 457 F.2d 1067, 1074 (2d Cir.1972); *Pandazapoulos v. Universal Cruise Line, Inc.,* 365 F.Supp. 208, 213 (S.D.N.Y.1973) (beneficial ownership sufficient to constitute employer-employee relationship). However, mere ownership of a vessel is not enough to subject a defendant to Jones Act liability. A defendant employer must also have some substantial contact with the United States. *Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 440–41 (2d Cir.), *cert. denied,* 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959).

The Supreme Court has enumerated eight factors to determine the extent of a defendant's contact with the United States: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; (7) the law of the forum; and (8)

the shipowner's base of operations. *Hellenic Lines v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953).

■ In this case, the only factors that could weigh in support of applying the Jones Act are the allegiance of the shipowner and its base of operations. In light of the court's assumption, for purposes of this motion, that John Latsis operates his shipping business here, it will deem the allegiance of the shipowner to be with the United States. The shipowner's base of operations remains a question of fact. Various factors determine the base of operations including the location of the shipowner's home office, the location where management and day-to-day operating decisions are made, the country where the ship most frequently calls or generates the most income, and the location of the ship's home port. *See Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1518 (11th Cir.1985); *Diaz v. Humboldt,* 722 F.2d 1216, 1218 (5th Cir.1984), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987); *Moncada v. Lemuria Shipping Corp.,* 491 F.2d 470, 473 (2d Cir.), *cert. denied sub nom. Ekberg Shipping Corp. v. Moncada,* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974). The record does not reveal whether John Latsis owns ships other than the LADY EMA, but plaintiff has alleged that he operates a shipping "empire" from the United States. If he does, contacts of his other ships with the United States would be relevant in determining the base of operations. *See Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 289, 296 (5th Cir.1984), *overruled on other grounds, In re Air Crash Disaster,* 821 F.2d at 1147 (5th Cir.1987); *Koupetoris v. Konkar Intrepid Corp.,* 535 F.2d 1392, 1396 (2d Cir.1976).

In her affidavit, Mrs. Armogeni stated that Hermes' Greek agent, Bilander, hires all the crew, performs all the day-to-day tasks, and provides all the loading and discharging instructions for the LADY EMA. Armogeni Aff. ¶ 8. Further, the LADY

EMA has called in the United States only once. *Id.* ¶ 5. The record has not been developed with regard to several other facts typically examined in determining the base of operations: namely, the ship-owner's home office, the location where management or financial decisions are made, and the contacts of the defendant's other ships, if any. If these factors pointed toward the United States, they might establish an American base of operations.

■ Although it appears that one or possibly two contacts lie within the United States, this court's role is not to tally up the various contacts enumerated by the *Lauritzen* Court and dismiss the case if the majority of contacts lie elsewhere. Rather, it must examine the United States contacts and determine whether they are substantial enough to confer jurisdiction. *See Moncada,* 491 F.2d at 472. Even if the plaintiff cannot ultimately show a base of operations in the United States, application of the Jones Act may still be proper since the Second Circuit has suggested that American ownership alone may be sufficient to establish jurisdiction. *See Antypas v. CIA. Maritima San Basilio, S.A.,* 541 F.2d 307 (2d Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977); *Moncada,* 491 F.2d at 473; *Bartholomew,* 263 F.2d at 443 n. 4.[2] Since plaintiff has not yet had the opportunity to take any discovery, the resolution of this issue must wait development of a sufficient record.

### C. Forum Non Conveniens

■ Hermes and John Latsis have moved to dismiss this action on the ground of forum non conveniens, claiming that Greece would be a more appropriate forum. Until fairly recently, the Second Circuit adhered to the rule generally followed in the other circuits that a court did not have discretion to dismiss a case on forum non conveniens grounds if it determined the Jones Act applied. *See, e.g., Antypas v. CIA. Maritima San Basilio, S.A.,* 541 F.2d 307 (2d Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977); *Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 443 n. 4 (2d Cir.), *cert. denied,* 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959). However, in *Cruz v. Maritime Co. of Philippines,* 702 F.2d 47 (2d Cir.1983) (per curiam), the Second Circuit reversed this trend, stating that a district court may dismiss a case on forum non conveniens grounds without first making a choice of law determination.[3]

The decision in *Cruz* was fully consistent with Supreme Court precedent. In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249–52, 102 S.Ct. 252, 262–64, 70 L.Ed.2d 419 (1981), the Court considered the application of the forum non conveniens doctrine to a negligence and strict liability action relating to an airplane crash in Scotland.[4] The

**2.** The Second Circuit has never actually reached this question since each of the cases in which it has suggested that American ownership might be enough to confer Jones Act jurisdiction involved American ownership and at least one other factor. *See Antypas,* 541 F.2d at 310 (shipping line operated from New York and finances controlled from New York); *Moncada,* 491 F.2d at 473 (base of operations in the United States, managing and chartering of vessel conducted from this country); *Bartholomew,* 263 F.2d at 441–42 (wrong occurred in American waters, plaintiff was American domiciliary, defendant's principal place of business was New York). The courts of this district are split on whether mere ownership would be sufficient. *Compare Bobolakis v. Compania Panamena Maritima San Gerassimo,* 168 F.Supp. 236, 238 (S.D.N.Y.1958) (Jones Act held applicable where the sole contact was American ownership of the vessel) *with Moutzouris v. National Shipping & Trading,* 194 F.Supp. 468, 470 (S.D.N.Y.1961) (Jones Act inap-

plicable where only contact was American ownership).

**3.** Although the *Cruz* decision did not expressly overrule any precedent, it substantially changed the manner in which courts in this circuit have analyzed forum non conveniens dismissals under the Jones Act. *See Damigos v. Flanders Compania Naviera, S.A.—Panama,* 716 F.Supp. 104 (S.D.N.Y.1989) (dismissing a Jones Act case on forum non conveniens grounds); *Doufexis v. Nagos S.S., Inc.,* 583 F.Supp. 1132, 1133 (S.D.N.Y.1983) (same); *see also Transunion Corp. v. Pepsico, Inc.,* 811 F.2d 127 (2d Cir.1987) (confirming that *Cruz* allows a forum non conveniens dismissal in Jones Act cases).

**4.** The factual background of *Piper* is as follows: The estates of several citizens and residents of Scotland who were killed in an airplane crash in Scotland brought a wrongful death action in California state court against the plane's Ameri-

lower court in *Piper* had held that a forum non conveniens dismissal was improper whenever the law of the alternative forum was less favorable than the law of the forum chosen by the plaintiff. The Supreme Court held that a court need not perform a choice of law analysis before determining whether a case should be dismissed on forum non conveniens grounds. *Id.* at 249, 102 S.Ct. at 262. The Court stated that the mere fact that the alternative forum would apply a substantive law less favorable to the plaintiff should not be given conclusive or even substantial weight. *Id.* at 250, 102 S.Ct. at 263. It reaffirmed the test set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), which was designed to determine the most convenient forum by balancing various public and private interest factors. The Court noted that the forum non conveniens determination would become "virtually useless" if central emphasis were given to the possibility of a change in law. *Piper*, 454 U.S. at 250, 102 S.Ct. at 263.

■ Plaintiff claims that *Cruz* is incorrectly decided because it rests on the assumption that another forum would necessarily apply the Jones Act to a case involving one of its own citizens. Nothing in the *Cruz* opinion supports plaintiff's assertion. The lower court in *Cruz* had already ruled that the Jones Act was inapplicable. 549 F.Supp. 285, 288–89 (S.D.N.Y.1982). The Second Circuit wrote only to point out that the lower court did not need to undertake a choice of law analysis before determining that it would dismiss on forum non conveniens grounds. 702 F.2d at 48. The *Cruz* court therefore made its determination with knowledge that the Jones Act was inapplicable and the Philippine court would

not apply it. Further, the *Cruz* reasoning is fully supported by *Piper*, which explicitly contemplated the alternative forum declining to apply United States law. Therefore, even assuming, without deciding, that a Greek court would be unlikely to apply the Jones Act in this case,[5] that fact alone would not bar dismissal.

Plaintiff also notes that several other circuits have not changed their position—that Jones Act jurisdiction bars a forum non conveniens dismissal—in the wake of *Piper*. See *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1486 (9th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988); *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1483 (10th Cir.1983); *Szumlicz v. Norwegian American Lines, Inc.*, 698 F.2d 1192, 1195 (11th Cir.1983). None of these courts, however, attempt to reconcile their decisions with the Court's holding in *Piper* that choice of law is not dispositive in a forum non conveniens motion. The Ninth Circuit in *Zipfel* discussed its ruling in the context of the Supreme Court's decision in *Baltimore & Ohio R.R. Co. v. Kepner*, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941), which established that forum non conveniens is unavailable as a basis for dismissal in cases filed under the Federal Employers' Liability Act ("FELA") because of the specific venue provision in that statute.[6]

The defendant in *Kepner* had argued that although venue was proper under the FELA's special venue provision, the plaintiff was "acting in a vexatious and inequitable manner in maintaining the federal court suit in a distant jurisdiction when a convenient and suitable forum is at respondent's doorstep." *Id.* at 51, 62 S.Ct. at 9. The Court acknowledged that it had the

---

can manufacturers. The owners of the plane were British and all of the decedents were Scottish. Plaintiffs admitted that they brought the action in the United States rather than Scotland because of its more favorable laws regarding liability, capacity to sue, and damages.

5. One commentator, who happens to represent plaintiff in this matter, claims that Greek courts have not yet applied the Jones Act to a case in which a Greek citizen has been injured on a Greek flag vessel. *See* Edelman *New Maritime*

*Cases on Forum Non Conveniens*, N.Y.L.J., Feb. 5, 1988, at 1, col. 1.

6. Except for suits grounded solely on diversity jurisdiction, the general federal venue provision allows suits to be brought in the judicial district where all defendants reside or in which the claim arose. 28 U.S.C. § 1391(b) (1982). The FELA venue provision also allows suit to be brought where the defendant is doing business. 45 U.S.C. § 56 (1982).

equitable power to dismiss the action, *id.* at 52, 62 S.Ct. at 9, but refused to do so on the ground that the Court must respect Congress' intent in drafting the venue statute. *Id.* at 53–54, 62 S.Ct. at 10. The Court observed that "[a] privilege of venue, granted by the legislative body which created this right of action, cannot be frustrated for reasons of convenience or expense." *Id.* at 54, 62 S.Ct. at 10. Therefore, it held that a suit brought in one federal district could not be dismissed on forum non conveniens grounds in favor of another district court when the statute under which the case had been brought specifically described where venue was proper.

The Jones Act, like the FELA which it incorporates, *see* 46 U.S.C. § 688(a), has a specific venue provision.[7] Although the *Kepner* decision involved the FELA provision, the Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), subsequently held that the reasoning of *Kepner* applied to all cases involving specific venue provisions. *Id.* at 505, 67 S.Ct. at 841. Congress apparently took issue with the Court's interpretation in *Kepner* and *Gilbert* of its intent and enacted 28 U.S.C. § 1404(a), which permits a federal district court to transfer a case to any other district where it might originally have been brought.[8] The Revisor's Notes to section 1404(a) specifically cite *Kepner* as an example of the need for the transfer provision.

 Today, although a dismissal is generally improper where transfer is available as a remedy, *see* C. Wright, A. Miller & E. Cooper, 15 *Federal Practice and Procedure* § 3828 at 176 (1976 ed.), the doctrine of forum non conveniens is still applicable where the more convenient forum is a foreign or state tribunal. *See id.* The courts must therefore determine whether the *Kepner* Court's holding—that a specific venue

provision precludes forum non conveniens dismissals—also survives in such circumstances. The Ninth Circuit followed *Kepner* in *Zipfel*, holding that the specific venue provision of the Jones Act barred a forum non conveniens dismissal. By embracing the *Kepner* decision, however, the Ninth Circuit implied that whenever Congress enacts a specific venue statute, it intends to override the common law doctrine of forum non conveniens. That would mean that a court could never dismiss a Jones Act case brought by a foreign plaintiff who met the technical requirements for jurisdiction. As discussed below, there are policies underlying the Jones Act that will sometimes weigh against forum non conveniens dismissals. The court declines to follow *Zipfel* when the effect would be to remove these types of considerations from the court's determination and mandate that every case arguably implicating the Jones Act be heard in United States courts. Such a result would conflict with the well-established history of decisions under the Jones Act in which courts have declared that the United States should not become the forum and lawmaker for the world's maritime defendants. *See, e.g., Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307, 323 (5th Cir. 1987); *Pain v. United Technologies Corp.*, 637 F.2d 775, 784 (D.C.Cir.1980), *cert. denied* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981); *Cruz v. Maritime Co. of Philippines*, 549 F.Supp. 285, 290 (S.D. N.Y.1982), *aff'd*, 702 F.2d 47 (1983).

Congress appears to have similar concerns. In 1982 it amended the Jones Act, adding a provision that prohibits an individual who is not a citizen or permanent resident of the United States from recovering for injuries sustained on an off-shore mineral or energy rig in the territorial waters of another nation. 46 U.S.C. § 688(b) (Supp.1987). Although this provision ad-

---

7. The Jones Act provides, in pertinent part: Jurisdiction in [actions under this act] shall be under the court of the district in which the defendant employer resides or in which his principal office is located.
46 U.S.C. § 688(a). The section pertains to both jurisdiction and venue. *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1487 (9th Cir.1987).

8. The text of the transfer provision reads as follows:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
28 U.S.C. § 1404(a) (1982).

dresses only off-shore vessels, its enactment suggests that Congress does not intend the reach of the Jones Act to be limitless. *See* H.R.Rep. No. 4863, 97th Cong., 2d Sess. 7 (1982) ("The courts have generally found that the substantive rights granted by the Jones Act do not extend to foreign nationals who lack sufficient contacts with the United States.... [This amendment] codifies this case law and clarifies that the substantive rights granted by the Jones Act do not extend to foreign offshore workers."); 128 Cong.Rec. 14,364 (1982) (United States offshore service companies are being severely impacted by lawsuits brought by foreign citizens working on American drilling rigs overseas; amendment ensures that these companies remain competitive).

In addition, several courts have held in the context of other statutes with specific venue provisions that a forum non conveniens dismissal is appropriate. The Ninth Circuit suggested in *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 431 (9th Cir.1977), that a claim brought under the Lanham Act, 15 U.S.C. § 1121 (1982), might be dismissed on forum non conveniens grounds and brought in Liechtenstein even though the Act contains a special venue provision.[9] In *Transunion Corp. v. Pepsico, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987), the Second Circuit unequivocally stated that a claim brought under RICO can be dismissed on forum non conveniens grounds despite that statute's special venue provisions. *See* 18 U.S.C. § 1965 (1982). The court also held that a dismissal was proper even though the alternative forum, the Philippines, afforded a substantially inferior remedy to the plaintiff. *Transunion*, 811 F.2d at 129; *see Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 279, 107 L.Ed.2d 259 (1989) (agreeing with the result in *Transunion* but not the reasoning).

Finally, although several circuits continue to assert that forum non conveniens dismissals are improper when the Jones Act applies, the Fifth Circuit in a recent case expressly overturned approximately twenty Jones Act cases in holding that this approach is inconsistent with the Supreme Court's decision in *Piper*. *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1163–64 n. 25 (5th Cir.1987), *vacated on other grounds sub nom. Pan American World Airways Inc. v. Lopez*, —— U.S. ——, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). The court held that the breadth of *Piper*'s command that courts should not give conclusive or even substantial weight to the possibility of a change in substantive law precluded an exception for Jones Act cases. *Id.*

Having determined that a district court may dismiss a Jones Act case on the ground of forum non conveniens, the court must therefore determine whether a forum non conveniens dismissal is appropriate in the instant case. The Supreme Court listed several private and public interest factors in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which guide the determination of a forum non conveniens motion. The private interest factors include: (1) the relative ease of access to proof; (2) the availability of compulsory process for unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) the possibility of viewing subject premises if appropriate; and (4) all other factors that would facilitate an easy, expeditious and inexpensive trial. The public interest factors include: (1) the possibility of court congestion; (2) not imposing jury duty on people who have no connection with the litigation; (3) the local interest in having localized controversies decided at home; (4) having a diversity case tried in a forum familiar with the governing law; and (5) avoidance of unnecessary problems in conflicts of law. *See id.* at 508–09, 67 S.Ct. at 843.

■ There is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which can be overcome only upon a strong showing that factors enunciated in *Gilbert* point toward trial in the alternative forum. *Piper*, 454 U.S. at 255, 102 S.Ct. at 265. This presumption applies with sub-

---

**9.** The Ninth Circuit in *Zipfel* did not address its earlier decision in *Wells Fargo*.

stantially less force when the plaintiff chooses a foreign forum, since the chosen forum is inherently less convenient. *See id.* at 256, 102 S.Ct. at 266.

 In this case the private interest factors point strongly toward dismissal. Most, if not all, of the documentary evidence, including Gazis' employment contract, the ship's log, the medical and autopsy reports, and various transcripts of testimony from the criminal proceeding in Greece are either still aboard ship, in Greece or in Amsterdam. Witnesses to the event, the treating physicians and the other crewmembers aboard the LADY EMA are presumably still in the Netherlands, aboard ship, or in Greece. None of these witnesses are subject to the subpoena power of the court. Although the depositions of these witnesses could be substituted at trial, this is not the optimal way for a jury to decide a case. Defendants contend that it will cost approximately $30,000 to transport and lodge all of the witnesses, assuming that they would voluntarily consent to testify. In addition, most of the documentary evidence is not in English, and most of the potential witnesses do not speak English, requiring the parties to hire translators and interpreters. Courts in this district have routinely dismissed cases with similar facts on forum non conveniens grounds. *See, e.g., Damigos v. Flanders Compania Naviera, S.A.—Panama,* 716 F.Supp. 104 (S.D. N.Y.1989); *Kassapas v. Arkon Shipping Agency, Inc.,* 578 F.Supp. 400 (S.D.N.Y.), *aff'd,* 738 F.2d 418 (2d Cir.1984); *Doufexis v. Nagos S.S., Inc.,* 583 F.Supp. 1132 (S.D. N.Y.1983).

The public interest factors cannot be determined without further discovery. The United States has a strong interest in applying the Jones Act to defendants who conduct a substantial amount of shipping business in the United States. If those defendants were not subject to Jones Act liability, they would have a competitive advantage over American shippers who must pay liability insurance to protect themselves against suits brought under the Jones Act. The Supreme Court recognized this in *Hellenic Lines v. Rhoditis,* 398 U.S. 306, 310, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970):

> We see no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act "employer."

Plaintiff's allegations suggesting American ownership and an American base of operations for the ship present the possibility of a very strong showing of United States interest in the case.[10] On the other hand, the Supreme Court has severely discouraged the adjudication of disputes that have only a minimal contact with this country since it hampers the courts' ability to give speedy relief to those parties properly before them. *See Piper,* 454 U.S. at 252, 102 S.Ct. at 264. There is a strong policy in favor of not subjecting "other litigants and the community at large [to] unwarranted imposition upon the local courts' jurisdiction." *See Noto v. Cia Secula di Armanento,* 310 F.Supp. 639, 649 (S.D.N.Y. 1970). Further, Greece has a strong interest in adjudicating the rights of Greek seamen. In fact, Greece has already demonstrated its interest in this particular case by initiating criminal proceedings against the master, chief officer, and boatswain of the LADY EMA. Of course, this factor would not preclude adjudication of the civil claims in this court if the United States had a strong interest in the dispute, but it is entitled to some weight.

The appropriateness of a dismissal in this case turns in large part on the extent of

---

**10.** In *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 152–58 (2d Cir.), *cert. denied* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980), the Second Circuit held that the American citizenship of the plaintiff did not preclude a dismissal on the ground of forum non conveniens. Although the United States has an interest in seeing its citizens recover under the Jones Act, a case in which the defendant conducts a substantial shipping business from the United States implicates broad policy interests of the United States and may present an even stronger case for retention of the suit.

the defendants' shipping business in the United States and whether the LADY EMA has an American base of operations. Thus far, plaintiff has been able to allege only American ownership of the vessel. Plaintiff has not been able to put forth facts sufficient to show an American base of operations, a fact that may control the forum non conveniens inquiry. In short, if the public interest in seeing that foreign competitors do not obtain an unfair advantage over domestic companies mandates application of the Jones Act, it might necessarily preclude dismissal on forum non conveniens grounds. Plaintiff should be given the opportunity to develop the record so that the court can assess the relevant facts.

■ Finally, dismissal on the ground of forum non conveniens presupposes at least two forums in which the defendant is amenable to process. *See Gilbert,* 330 U.S. at 506–07, 67 S.Ct. at 842. Therefore, any renewed motion to dismiss would have to be accompanied by an affidavit from each defendant that it will waive any defenses based on statutes of limitation, make witnesses and documents available, and pay any judgment rendered against it by the Greek court. *See, e.g., Ali v. The Offshore Co.,* 753 F.2d 1327, 1334 (5th Cir.1985), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987); *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 394–95 (5th Cir.1983), *overruled on other grounds, In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147 (5th Cir.1987).

D. *The Collective Bargaining Agreement*

Defendant's attorney stated in his 3(g) Statement that Gazis' contract of employment is covered by a collective bargaining agreement between the Panhellenic Seamen's Federation and the union of Greek shipowners. 3(g) Statement ¶ 11. The Col-

lective Bargaining Agreement provides for a seamen's pension fund and requires that any claim or right arising out Gazis' employment be resolved in a Greek forum. *Id.* The Supreme Court held in *The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972), that forum selection clauses in commercial contracts are prima facie valid and should be enforced unless shown to be unreasonable under the circumstances. The opposing party may show unreasonableness by establishing fraud, a large disparity in bargaining power, that serious inconvenience or unfairness would result, or that a strong public policy of the forum in which the action was brought would be violated. *See id.* at 12–16, 92 S.Ct. at 1914–16.

■ In some cases, courts have accorded little weight to forum selection clauses in contracts between seamen and their employers, probably because they have perceived a disparity in bargaining power. *See Vlachos v. M/V Proso,* 637 F.Supp. 1354, 1363 (D.Md.1986); G. Gilmore & C. Black, *The Law of Admiralty,* 476 (2d ed. 1975).[11] The court cannot presume such disparity where, as here, the seaman is represented by a union that negotiated the contract on his behalf. Ordinarily, therefore, the existence of a collective bargaining agreement should control the choice of law and choice of forum determinations. However, this case may present a situation in which a strong public policy of the United States is implicated.

■ Of course, both the United States and Greece have an interest in enforcing collective bargaining agreements as the best way to regulate labor relations. *See Damigos v. Flanders Compania Naviera, S.A.—Panama,* 716 F.Supp. 104, 107 n. 3 (S.D.N.Y.1989). A court in this district recently refused to apply the Jones Act in a case in which the injured seaman was a party to a collective bargaining agreement

11. In *Hellenic Lines v. Rhoditis,* 398 U.S. 306, 310, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970), decided two years prior to its decision in *The Bremen,* the Supreme Court disregarded a contract stating that Greek law and a Greek collective bargaining agreement would apply to all disputes. The Court found the contract a "mi-

nor weight[ ] in the scales compared with the substantial and continuing contacts that this alien owner has with this country." *Id.* The opinion in that case, however, gives no indication that the court was asked to weigh the policy considerations favoring enforcement of collective bargaining agreements.

between the Greek Seaman's Union and the Pan Hellenic Seaman's Federation. *See id.* at 106–07. However, the only significant contact with the United States in that case was the ship's American agent and broker. In this case, plaintiff has alleged an American owner and American base of operations. These facts more strongly implicate the policy favoring application of the Jones Act. The plaintiff should be given the opportunity to take discovery on these issues since they will determine which policy interest—applying the Jones Act or enforcing the collective bargaining agreement—should control in this case.

Defendants also claim that the national interest in enforcing collective bargaining agreements warrants a stay of this action pending the outcome of a declaratory proceeding brought by Hermes in Greece under the collective bargaining agreement. Again, this issue is predicated on the determination of which policy interest is paramount. The United States courts are not required to cut off a remedy created by Congress where there is a strong policy interest favoring enforcement of the remedy. *See Laker Airways v. Sabena, Belgian World Airways*, 731 F.2d 909, 936 (D.C.Cir.1984). Consequently, a stay is inappropriate in this case until plaintiff has the opportunity to develop the record.

### E. *Other Defenses*

#### 1. Personal Jurisdiction over John Latsis

■■■■ John Latsis has also moved to dismiss the action against him claiming defective service of process. Plaintiff attempted to serve John Latsis by delivering a copy of the summons and complaint to the Bilander offices in Greece and the Latsis (USA) offices in New York. Service was not proper under either New York or federal law since plaintiff has not established that a copy of the summons and complaint

were left at defendant's dwelling house or usual place of abode with a person of suitable age and discretion. *See* N.Y.Civ. Prac.L. & R. ("CPLR") § 308(2) (McKinney 1972); Fed.R.Civ.P. 4(d)(1); *Rose v. Koch*, 465 F.Supp. 1157, 1159 (E.D.N.Y.1979). Nor can service be proper under Rule 4(d)(1) since, as a general matter, an individual cannot be served through a general agent. *See Edward V. Green Enterprises, Inc. v. Manilow*, 103 Misc.2d 869, 870, 427 N.Y.S.2d 199, 200 (Sup.Ct.1980). However, the plaintiff may yet be able to effect service on this defendant. The court therefore exercises its discretion to allow the plaintiff the opportunity to correct the defect. *See Grammenos v. Lemos*, 457 F.2d 1067 (2d Cir.1972).

#### 2. Personal Jurisdiction over Hermes

■■■■ Hermes contends that it is not subject to personal jurisdiction in New York because it does not have the requisite minimum contacts with the state sufficient to justify application of New York's long-arm statute, CPLR § 302. The due process requirement of the fifth amendment requires only nationwide contacts for causes of action brought under federal statutes such as the Jones Act. *See Johnson Creative Arts v. Wool Masters*, 743 F.2d 947, 950 (1st Cir.1984). However, although the Constitution allows nationwide personal jurisdiction, the Federal Rules of Civil Procedure limit the places in which a defendant may be served with process. *See id.* Fed.R.Civ.P. 4(e) allows service outside the state in which the federal court sits when authorized by a statute of that state or a federal statute. The Jones Act is silent as to the scope of service of process. Therefore, personal jurisdiction is proper over a Jones Act defendant only if it has both national contacts and is subject to the long-arm statute of the state in which the district court sits.[12] Plaintiff alleges that

---

12. Various courts have noted the anomaly that a federal court's power over the person in federal question cases is dependant on and will vary according to the law of the state in which it sits. *See Hartley v. Sioux City & New Orleans Barge Lines, Inc.*, 379 F.2d 354, 356 n. 2 (3d Cir.1967); *Gkiafis v. Steamship Yiosonas*, 342 F.2d 546, 549

(4th Cir.1965). Although the court need not resolve the issue at this point, this is likely the rule in Jones Act cases since Congress has not authorized extraterritorial service of process for the Jones Act. *Navarro v. Sedco, Inc.*, 449 F.Supp. 1355, 1358 n. 1 (S.D.Tex.1978); *cf. Black v. Acme Markets, Inc.*, 564 F.2d 681, 685 n. 5

Hermes conducts a substantial business from this district and the United States. Hermes denied the allegation with regard to New York, but not the United States. Mrs. Armogeni and Mr. Walsh stated only that Hermes transacts no business in the state of New York. *See* Armogeni Aff. ¶ 14; 3(g) Statement ¶ 8. Therefore, by resolving all reasonable inferences in plaintiff's favor, the court assumes that Hermes conducts business in the United States, satisfying the national contacts test.

The application of New York's long-arm statute is somewhat more problematic. Section 302(a)(1) provides that a court may exercise personal jurisdiction over a non-domiciliary when it transacts business within the state or contracts anywhere to supply goods or services in the state. The activity of an agent of a party within the state, if substantial, will justify personal jurisdiction over that party. *See Koupetoris v. Konkar Intrepid Corp.*, 535 F.2d 1392, 1395 (2d Cir.1976). Plaintiff contends, and defendant denies, that Latsis (USA) operates as Hermes' agent in New York. Complaint ¶ 6; Armogeni Aff. ¶ 6. As stated earlier, however, it is reasonable to infer from the fact that both John Latsis and Latsis (USA) operate from the Petrola House that Latsis (USA) has some role regarding the LADY EMA. If Latsis (USA) does any work on behalf of the LADY EMA, it necessarily is acting as the agent of Hermes, the admitted owner of the ship. Although the defendant's affidavits seem unequivocal, the court concludes that the plaintiff should be given some leeway to develop the record on the issue of the relationships between the various parties.

### CONCLUSION

Defendants' motions to dismiss this action are denied. Defendants' motion to stay these proceedings pending the outcome of the parallel proceedings in Greece are also denied. Plaintiff is given leave to conduct limited discovery on the following issues:

1. The residence and citizenship of John Latsis.
2. The contacts of the defendants and their parents, subsidiaries and affiliated organizations with the United States.
3. The ownership interests in the LADY EMA.
4. The relationships between the defendants.

Plaintiff is given sixty days to effect service on John Latsis. Until service is perfected, John Latsis shall not be subject to any discovery requests involving him in his capacity as an individual defendant. At the close of discovery, if appropriate, defendants may renew their summary judgment motions and motions to dismiss.

So Ordered.

(5th Cir.1977) (Clayton Act authorizes nationwide extraterritorial service).