Savas DAMIGOS, Efstathios Fatouros, Andreas Galatis, Dimitrios Gididis, Argyrios Grontis, Marinos Ioannou, Nikolaos Kardasis, Ch. Klaoudatos, D. Kosmatos, Konstantinos Kostopoulos, Efthimios Kouloumbis, Stavros Lefkopoulos, Stylianos Manousis, I. Mavrikos, Impi Memet, S. Mouzakitis, Nikodimos Oikonomou, Omer, Evangelos Palavakis, Ioannis Papaspyrou, A. Poulos, Constantine Rossidis, Sampri Serifoglou, P. Sgouros, Achilleas Skoutas, Lazaros Stamos, Koninos Stamou, Christos Spyros Stefanatos, Ali Tsaoussoglou, G. Tsouras, George Tzemopoulos, Stylianos Zacharioudakis, Georgios Zachos, I. Zoulfos, and the wives of the officers and seamen, including Irene Poulos, Plaintiffs,

v.

FLANDERS COMPANIA NAVIERA, S.A. —PANAMA, Atlantic Maritime Enterprises Corp., and T. Peter Pappas, Defendants.

Vasilios VAVASSIS, et al., Plaintiffs,

v.

FLANDERS COMPANIA NAVIERA, S.A. —PANAMA, Atlantic Maritime Enterprises Corp., and T. Peter Pappas, Defendants.

Nos. 88 Civ. 1121(PNL), 87 Civ. 8988(PNL).

United States District Court, S.D. New York.

July 3, 1989.

Kreindler & Kreindler, New York City (Paul Edelman, of counsel), C. John Caskey, Baton Rouge, La., for plaintiffs.

Freehill, Hogan & Mahar, Patrick J. Bonner, New York City, for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

This consolidated action involves the claims of Greek seamen and their wives against Flanders Compania Naviera S.A.—Panama ("Flanders"), the owner of the M/T Tassia, Atlantic Maritime Enterprises Corp. S.A. ("Atlantic–Piraeus"), the vessel's operating agent located in Piraeus, Greece, Atlantic Maritime Enterprises Corp. ("Atlantic–US"), the United States agent for the vessel, and T. Peter Pappas, a shareholder and director of defendant corporations. The action arises out of the seizure of the Tassia and detention of its crew by Nigerian officials on February 25, 1985. Plaintiffs allege that defendants are liable under the Jones Act, 46 U.S.C. App. § 688, and general maritime law for failing to assure proper documentation, for dealing with an unreliable charterer, and for failing to come to the aid of plaintiffs when they were detained in Nigeria.

Defendants move (1) to dismiss for lack of jurisdiction based on a forum selection clause designating Greece as the exclusive forum for this action; (2) to dismiss as against Atlantic–US and Pappas for failure to state a claim; (3) for summary judgment pursuant to Fed.R.Civ.P. 56 with respect to the twenty-five plaintiffs who executed general releases in favor of defendants; and (4) to transfer the action to Greece pursuant to the doctrine of *forum non conveniens*.[1]

## Background

The M/T Tassia is a Greek flag vessel registered in Piraeus, Greece. In 1985, the Tassia was owned by defendant Flanders, a Panamanian corporation, and was operated and managed by defendant Atlantic–Piraeus. Defendant Atlantic–US served as United States agent for the vessel. Sometime prior to February 16, 1985, a charter agreement was negotiated between the Tassia's broker, Rigos Chartering, which is located in New York, and Balkan–Orient–Handels GmbH, a German corporation. Pursuant to the charter agreement, the vessel sailed to Bonny, Nigeria to take on a cargo of crude oil to be delivered to the United Kingdom. The Tassia anchored in the Port of Bonny on February 16, 1985, where it awaited further orders. On or about February 25, 1985, before the vessel took on the oil cargo, Nigerian officials took control of the vessel and arrested the crew. The Government of Nigeria alleged that the vessel was attempting to illegally export crude oil from Nigeria.

According to plaintiffs, the vessel's officers were detained in Nigerian jails for nearly two years, threatened with the death penalty, ill fed, and exposed to malaria, dysentery, and profound mental stress; the crew was incarcerated for approximately eight months under similar conditions. Throughout this time, government officials of Nigeria and Greece and representatives of Atlantic–Piraeus met repeatedly to negotiate the release of the vessel and crew. Eventually, the crew, owners and charter-

1. The court clearly does not have the power to transfer the action to Greece. Accordingly, I treat defendants' motion to transfer as a motion to dismiss.

ers were exonerated from any charges against them relating to the export of oil. Plaintiffs were released and returned to Greece, where they were examined and treated by doctors for injuries and illnesses sustained while in prison.

On October 23, 1985, six of the plaintiffs filed suit in the Court of First Instance in Piraeus, and arrested the Tassia. On November 12, 1985, nineteen other plaintiffs filed suit, requesting the arrest of the vessel. As a result of settlement negotiations, plaintiffs signed general releases and received payment from Atlantic–Piraeus in settlement of their claims. Execution of the releases was witnessed by police officers at a local police precinct in Greece.

### Discussion

█ In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the United States Supreme Court held that dismissal of an action may be appropriate where trial in plaintiff's chosen forum will impose a great burden on the other parties or the court. The Court listed private and public interests as factors that district courts should balance in deciding whether to dismiss a case under the doctrine of *forum non conveniens,* including: plaintiffs' choice of forum; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of willing witnesses; all other practical matters that make trial of a case easy, expeditious, and inexpensive; choice of law considerations; and the relationship of plaintiffs' chosen forum to the occurrences that give rise to the litigation. *Id.* at 508–09, 67 S.Ct. at 843; *see Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981). Consideration of these factors in this instance favors dismissal.

### 1. Plaintiffs' Choice of Forum

█ Generally, plaintiff's choice of forum is afforded great weight. Here, however, plaintiffs' choice is of less import. First, where plaintiff is foreign to the United States, plaintiff's choice of forum is entitled to less weight. *Piper Aircraft Co. v. Reyno,* 454 U.S. at 255, 102 S.Ct. at 265; *Cruz v. Maritime Co.,* 549 F.Supp. 285, 289 (S.D.N.Y.1982), *aff'd,* 702 F.2d 47 (2d Cir. 1983). All plaintiff seamen and their wives are citizens and residents of Greece (with the exception of one plaintiff who resides in Cyprus), and have no connection to New York. They do not contend that the United States is a convenient forum for them.

Second, plaintiffs were parties to an agreement which contains a forum selection clause providing that any claims arising from their employment on board a Greek vessel are governed by Greek law and must be brought in a Greek court. The Greek Collective Bargaining Agreement (the "Agreement") is a collective bargaining agreement freely negotiated between the Greek Seaman's Union and the Pan Hellenic Seaman's Federation, a federation of owners of Greek flag vessels. The Agreement provides:

> Individual contracts of employment, to which the present Collective Agreement applies, will be governed exclusively as to any claim or right, arising out of the seamen's employment and including claims on account of illness or accident, by the provisions of the present Collective Agreement and Greek Law ... and will be for decision by the Greek Authorities and the Greek Law.

Chapt. XX, ¶ 1 (citations to Greek law omitted).[2]

█ Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Enforcement

---

2. In addition to representing the intent of the parties, the Agreement has been approved by the Greek Ministry of Merchant Marine and has the effect of law in Greece. Lascaratos Aff. ¶¶ 16–18 (citing Compulsory Law 3276/1944, art. 5, ¶ 1 ("the collective bargaining agreements which have been entered into pursuant to this law when ratified by a decision of the Minister of Merchant Marine are deemed valid and binding during their duration"); Supreme Court 709/71 RLL 31,277; Supreme Court 692/67 BLL 24,135).

may be unreasonable where the opposing party establishes fraud or overreaching bargaining power, where enforcement would violate strong public policy of the forum in which the action is brought, or where serious inconvenience or unfairness would result. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 12–16, 92 S.Ct. at 1914–17. None of these factors exist here.[3]

Plaintiffs contend that the exclusive jurisdiction of the Greek courts does not apply and Greek law does not govern where the lawsuit arises out of facts occurring outside of Greece. The language of the Agreement does not make any distinction with respect to occurrences outside of Greece, and there is little support for plaintiffs' proposition. Because the contract governs the employment of seamen, it was undoubtedly foreseen that disputes might well involve occurrences outside of Greece. The failure of the contract to distinguish them rather suggests they were intended to be covered by its terms. Regardless of whether the forum selection clause applies in this case, the fact that plaintiffs agreed to bring all suits in Greece further reduces the weight that should be given plaintiffs' choice of forum and further supports dismissal of this action.

## 2. Non–Party Witnesses

The parties agree that this will be a lengthy trial and will involve many non-party witnesses. Nearly all of the non-party witnesses are Greek citizens and reside in Greece. Of the six crew members who have chosen not to sue, but are likely witnesses, five are residents of Greece, and one resides in England. The attorneys who

negotiated the releases in the Greek action reside and work in Greece. The seven police officers who witnessed the signing of the releases are all in Greece. A number of high ranking Greek diplomats and officials from the Ministry of Merchant Marine carried on extensive negotiations with the Nigerian government. The representatives of Atlantic–Piraeus who attended the negotiations in Piraeus are citizens of Greece. Two Greek citizens and residents traveled to Nigeria on behalf of Atlantic–Piraeus. A number of Greek relatives of crew members went to Nigeria at Atlantic–Piraeus' expense to visit their imprisoned relatives. Ten doctors, all located in Greece, examined or treated the plaintiffs in Greece following their imprisonment. Two members of the Pan Hellenic Union of Captains and Deck Officers of the Greek Merchant Marine state that they followed the case very closely and will testify as to the reasonableness of the owners' efforts to obtain the release of the vessel and crew.

The expert witnesses will probably be Greek as well. Plaintiffs claim that the incident affected their ability to earn their livelihood and had a detrimental effect on their careers. The parties agree that there will be a need for economics experts familiar with employment opportunities for and earning potential of Greek seamen in Greece.

Compulsory process will not be available to assure the attendance at trial of these witnesses, whose presence at trial can in all likelihood be assured if the case proceeds in Greece. If the action remains in the United States, thorough depositions will need to be taken of each of the witnesses in

---

**3.** There is no evidence of fraud or overreaching in the making of the contract, which was negotiated through collective bargaining. It is certainly not seriously inconvenient for Greek plaintiffs to litigate in Greece. With respect to public policy, enforcement of the Agreement is supported by the national policies of both Greece and the United States. National labor policy in Greece strongly supports collective bargaining as a way of regulating the legal relationship between employers and employees. *See* Greek Constitution of 1975, art. 22, ¶ 2 (freely negotiated collective bargaining agreements shall supplement the law regarding the general

conditions of employment). The national policy of the United States also supports collective bargaining as the best method for promoting industrial peace. It therefore supports the enforcement of terms of collective bargaining agreements regarding resolution of disputes, because national labor policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *United ed Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

Greece. The taking of such discovery will require defendants' counsel to be away from home for extended periods of time at great expense. In addition to the burden of such depositions, defendants may be prejudiced if required to go to trial with nothing but deposition testimony of these witnesses. Thus, the large number of Greek witnesses whose attendance cannot be compelled weighs strongly in favor of dismissal.[4] Moreover, even if these witnesses are willing to travel to New York for trial, and there is no representation that any of them is willing, the cost to the parties will be tremendous.

In contrast, there are only two non-party witnesses who reside in the United States. With respect to both Emmanuel Rigos and Captain Anthony Nikolopoulos, a trial in Greece is not particularly inconvenient. Rigos travels there frequently, and Nikolopoulos travels in Greece from time to time. Both men were born in Greece and are fluent in Greek. Both agree to appear in Greece for deposition and trial, and defendants agree to bear the cost of travel.

3. **Relative Ease of Access to Sources of Proof and Other Practical Matters That Make Trial of a Case Easy, Expeditious, and Inexpensive**

There will be easier access to documents in Greece. The vessel's logs, pay vouchers and other documents are located there, as well as plaintiffs' medical records. In addition, these documents are written in Greek and would require translation for trial in this country. Similarly, the vast majority of witnesses speak only Greek and will require an interpreter at depositions and at trial if the action remains in this court. The cost of interpreters and translation of

documents will, for the most part, be avoided if the trial is conducted in Greece.

4. **Choice of Law Considerations**

The neccesity of conducting conflict of laws analyses, and the likely need to apply Greek law points toward dismissal.[5] *See Piper Aircraft Co. v. Reyno,* 454 U.S. at 251, 102 S.Ct. at 263 (the doctrine of *forum non conveniens* "is designed in part to help courts avoid conducting complex exercises in comparative law"); *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843 (public interest factors point towards dismissal where the court would be required to "untangle problems in conflict in laws, and in law foreign to itself"); *see, e.g., Calavo Growers of California v. Belgium,* 632 F.2d 963, 967 (2d Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *Schertenleib v. Traum,* 589 F.2d 1156, 1165 (2d Cir.1978).

■ Plaintiffs claim to be entitled to relief under the Jones Act. They argue that they may lose their Jones Act claims if forced to litigate in Greece. The Court of Appeals for the Second Circuit has expressly ruled that district courts need not exercise their power to adjudicate Jones Act claims when they find that the doctrine of *forum non conveniens* is applicable. *Cruz v. Maritime Co.,* 702 F.2d 47, 48 (2d Cir.1983); *accord In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147, 1163 n. 25 (5th Cir.1987) (en banc) (agreeing with *Cruz* ), *vacated on other grounds,* — U.S. ——, 109 S.Ct.1928, 104 L.Ed.2d 400 (1989); *but see Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1486 (9th Cir.1987) (*forum non conveniens* doctrine inapplicable where plaintiff states a claim under the Jones Act),

---

**4.** Several Nigerian citizens may be called as witnesses at trial. With respect to them, it would be no less convenient to try the case in Greece than in this court.

**5.** According to the Agreement, Chap. XX, ¶ 1, all issues in this action are governed by Greek law. Traditional choice of law analysis also strongly suggests that the issues relevant to this action, including whether the general releases are valid and whether the Agreement is applicable, are governed by Greek law. For example, in defense of the action, defendants contend that

many of the plaintiffs executed general releases, releasing any and all claims they may have against defendants arising out of the incident in Nigeria. Plaintiffs deny the validity and contest the scope of the releases. The issue of the validity of the releases would likely be governed by Greek law, because the releases were executed in Greece, by Greek citizens, in connection with a Greek lawsuit involving a Greek flag vessel, and were witnessed by Greek police officers following negotiations in Greece.

*cert. denied,* — U.S. ——, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988); *Needham v. Phillips Petroleum Co.,* 719 F.2d 1481, 1483 (10th Cir.1983) (if United States law is applicable, the *forum non conveniens* doctrine does not apply). It is not the proper function of the choice of forum doctrine to assure the plaintiff access to whatever forum accords him the most favorable legal rules.

The Second Circuit's holding in *Cruz* to this effect reflects the views expressed by the Supreme Court in *Piper.* "The possibility of a change in substantive law [resulting from change of forum] should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper Aircraft Co. v. Reyno,* 454 U.S. at 247, 102 S.Ct. at 261. "[I]f conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless." *Id.* at 250, 102 S.Ct. at 263. District courts should not consider differences in remedy between forums unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254, 102 S.Ct. at 265; *see also Canada Malting Co. v. Paterson Steamships, Ltd.,* 285 U.S. 413, 419–20, 52 S.Ct. 413, 414–15, 76 L.Ed. 837 (1932) ("We have no occasion to inquire by what law the rights of the parties are governed, as we are of the opinion that, under any view of that question, it lay within the discretion of the District Court to decline to assume jurisdiction over the controversy.").

Thus, the seamen's hope to gain the benefits of the Jones Act is not a strong factor weighing against dismissal.

### 5. Other Public Interest Factors

Other public interest factors also weigh in favor of dismissal. Greece has a strong interest in the well-being of Greek seamen and Greek vessels, generally, and in this action in particular, where Greek officials were heavily involved in negotiations for the release of the vessel and crew members. Conversely, the United States has no interest in adjudicating disputes involving Greek seamen employed on Greek flag vessels in foreign waters, and has no interest in this action. In fact, when Pappas requested assistance in securing the release of the Tassia and its crew from United States officials, he was informed that the United States government would not get involved in a dispute between a Greek flag vessel and the government of Nigeria.

Dismissal is also favored by the large burden this case will impose on this court relative to the forum's minimal interest in the controversy. *See Piper Aircraft Co. v. Reyno,* 454 U.S. at 252, 102 S.Ct. at 264 (if courts do not decline to adjudicate foreign disputes, "[t]he flow of litigation into the United States would increase and further congest already crowded courts"); *Cruz v. Maritime Co.,* 549 F.Supp. at 290 ("Our courts' ability to discharge their obligations to give speedy justice in matters properly before them would be substantially impaired to the prejudice of all if they took it upon themselves also to resolve the disputes of the rest of the world."); *Noto v. Cia Secula di Armanento,* 310 F.Supp. 639, 649 (S.D.N.Y.1970) (Weinfeld, J.) (the doctrine of *forum non conveniens* protects "other litigants and the community at large from unwarranted imposition upon the local courts' jurisdiction"). The connection between this action and the United States is slight at best, while its connections with Greece are overwhelming. I conclude that the interests of Greece, the United States and this forum all favor dismissal of this action in favor of an action in Greece.

Defendants consent to jurisdiction in Greece, agree to appear in any action commenced by plaintiffs in Greece, and waive any statute of limitations or laches defenses if suit is commenced in Greece within six months of the dismissal of this action.

### Conclusion

Defendants' motion to dismiss on the ground of *forum non conveniens* is granted.

SO ORDERED.